Good morning, Your Honors. Bradley Jacobs, appearing for the appellant, the De La Fuentes, what I'm going to call collectively the De La Fuentes. The first issue I'd like to raise is one that was raised by the FDIC approximately a month ago. Is it Fuentes or Fuente? De La Fuente. Okay. The issue raised by the FDIC approximately a month ago as to mootness and why this case isn't moot. And there are three causes of action that were disposed of in the underlying case. The third cause of action, which related to an injunctive relief, given the fact that the bank has been sold, that would be the one that would be covered by any mootness. Obviously, we have an objection to that evidence coming in at this point, but assuming the court was to go down that road, we believe that the remaining causes of action, which dealt with constitutional violations for takings, that those actions should have proceeded forward and that it was improper for the court to first essentially frame the case on a factual basis. How would your client be affected by any relief he gets? My client will be affected by the relief he gets. The request is that the case be reinstated so that the constitutional takings claims, in other words, that the interference with his property right to sell the stock in the bank was interfered with. Now, what we have by virtue of a sale of the bank is simply a bottom line, if you will, a mitigation number for which to balance the deal that was lost with the other investor off of. In other words, he had one deal that was lost, we say, by the improper interference with the FDIC. Now that the bank's been sold, you essentially have another number. It's no different than a mitigation issue at this point. And so we believe that the constitutional takings claims, the first two causes of action, should be allowed to proceed and that those were improperly disposed of, first by characterizing the issuance of jurisdiction, yes, we have it, then by characterizing the transaction using a document not necessary to interpret the claim. You're taking this claim against the United States. You have to go to the Court of Federal Claims. Now, the Court exercised jurisdiction here and said that it had jurisdiction over this claim, and I believe it does. I don't think it does. Under 1818H2, I mean, it's very limited jurisdiction that you find in the district court for enforcement of an order, but I don't see how you get around the language that says it doesn't have any jurisdiction to affect by injunction or otherwise the issuance or enforcement of any order to review, modify, suspend, terminate, or set aside. That's 1818I1. I don't see where the jurisdiction comes from here.  Well, what the Court determined, which I believe was correct, is that this was outside the scope of their order, that their order did not, by the terms that they drafted, deal with the issue of sale. And so that we came in here saying that they are acting outside the scope of their order and seeking relief on that basis. And that is what he initially determined. Then he went and determined the sale. I'm sorry. Let me just make sure I understand. Are all of the claims and damages and possible relief has to do with sort of past conduct? Does your client have any more bank stock or bank interests that might be affected by the interpretation of this order? No. No. The bank has been sold. He doesn't have other bank stock or interest in other banks that survived that sale? Not to my knowledge, Your Honor. So insofar as interpretation, resolution of any of the legal issues, it all bears on past conduct? Correct. The events of basically February of 2003 as it related to that process. So no matter what the order means or doesn't mean, it's not in any way going to affect how your client behaves in the future or what he feels free to do or not free to do. Exactly. Exactly. So I'm not sure. So the injunctive relief request is moved. So is declarative relief. Correct. Right? So what do you got left? We have a damages case here is what we have left. We have a damages case based on the FDIC coming in and saying, we have an order that doesn't say anything about sale that's going to prohibit this sale, and then running around and scaring off a buyer for this stock. Now, subsequently, three years later, the bank is sold and the damages are fixed, but that doesn't negate the conduct that occurred back in 2003. And I believe that the Federal Court properly realized it had jurisdiction because it read the plain language of the order. The order drafted by the FDIC, an order that's been previously up at this court, and was affirmed, and it basically says that it doesn't speak at all to sale. And so if you're outside the scope of that order and acting outside of it, it's an ultraviolence act. And I think the Federal Court does have jurisdiction over that. It seems to me that's an enforcement problem, and the Court doesn't have jurisdiction over enforcement problems. But then you're wrapping it within the confines of that order. And what the Court found is that the order doesn't speak to that. I understand your argument. We'll see what the other side says. Thank you, Your Honor. May it please the Court, my name is Tom Holtzman. I represent the FDIC. Can you raise the jurisdictional point that I'm bringing up? Yes, we raised it before the district court. I think at this point it's moot because 1818I says by injunction or otherwise. So the sale of the stock, in our view, completely moots that jurisdictional issue. All that's left are damages issues. In connection with the mootness, I would mention that while my opponent claims that it wasn't properly before the Court, my copy of the notice of cases set for hearing says if your case has become moot or a settlement is imminent, immediately advise this office in writing. And we did. We actually sent the letter several days before receiving it. But I think this, the question of whether it's moot is properly before the Court or the question of whether the stock was sold. Are you claiming that damages claims are moot? No. We agree with Mr. De La Fuente that the damages claims aren't moot, but at this point the damages claim, the appeal at this point in terms of damages revolves around a purely hypothetical question about what we can call the deal that never was and never will be, where he negotiates the sale of his shares in the bank. He never, despite repeated opportunities to allege or present evidence of an attempted sale, the only thing we have in the record is the Castle Creek term sheet, which was a sale of bank assets and liabilities and clearly within the four corners of the Prohibition Order. He still, even in his appellate brief, has not told us what was this sale of stock. And even in his argument, what was this potential sale of stock that never came about? What we know about Castle Creek from his counsel at the TRO hearing was that what began perhaps as a stock sale morphed or transformed itself into what came through in the term sheet, the sale of assets and liabilities. And if you read excerpts of record at pages 63 through 65, you can see Mr. Jacobs describe that process, why Mr. De La Fuente decided not to go forward with the stock sale, but to structure it as a sale of assets and liabilities. He amended his complaint twice, each time after I had filed a motion to dismiss it for summary judgment. The last statement of material facts not in dispute plainly puts this matter in dispute. On page 81 of the excerpts of record, my fact number five, De La Fuente has never presented to the FDIC for approval a proposal involving only the sale of the stock in the bank, and at no time did the FDIC prevent or attempt to prevent him from selling stock in the bank. I mean, that puts it squarely at issue. If he had any kind of evidence to present to the district court, that was the time to do it. So the district court properly dismissed this claim for damages, and even if he had presented that information, he couldn't state a claim. His count one purports to be a takings claim, but as this Court is probably aware, the Federal Circuit's seminal holding in the Taub Lake case, which says that ‑‑ Oh, yeah, I read it weekly. Yeah. Judge Kaczynski, you probably know this better than I do. To state a takings claim, you have to concede that the government's action was authorized. His complaint doesn't concede that. It is ‑‑ Why didn't takings claim belong in the Federal claims anyway? Well, we've ‑‑ historically the FDIC has taken the position that takings claims can be in district court against us. We're not appropriated funds instrumentality. That's the position. Not an appropriated funds instrumentality. Right. That's the position we've taken. Okay. Are we subject to the FTCA? Yes, we are. We also have our own sue and be sued clause, which differentiates ‑‑ But if you're sued, you have to be sued under the Federal Tort Claims Act. Right. Not under ‑‑ Constitutional tort of this kind, which is the second ‑‑ I'm talking about ordinary torts. Pardon? Yeah, ordinary torts, yeah.  It's very complicated. Yeah. In any event, a proper takings claim hasn't been stated by the complaint, and the second count, which is due process constitutional claim, is precluded by the Supreme Court's decision in FDIC v. Meyer, which held that there was no cause of action against the FDIC under Bivens. And that's 510 U.S. 417. So he didn't bring in the evidence that he needed to keep the case in court, and even if he had, he doesn't have a legal claim on either the takings or the claim of the constitutional tort. Thank you. Thank you. There you have it. Averagely responsive. It's the best. This case was not dismissed based on the summary judgment motion that was brought. It was dismissed based on a lack of jurisdiction. And after the ---- We can affirm on any basis. Oh, by the record. So you better deal with this. And the evidence, if it was affirmed based on a summary judgment ruling, then we were denied the opportunity to conduct discovery. We moved under Rule 56 to conduct discovery. We were prohibited. We were prohibited from all discovery. And when initially the ---- So what are you going to prove? That it was a stock sale? Absolutely. And that was the allegation of the complaint, and there was evidence of a stock sale. The evidence that the district judge relied upon was a term sheet, a term sheet neither drafted by my client nor sent to my client, a term sheet drafted by a third party and sent directly to the bank that said there was an offer for the assets of the bank. Now, my client doesn't own, none of my clients own the assets of the bank. They own stock. It would be something akin to a person who is a shareholder in Disneyland offering to sell the monorail. But my client didn't offer to sell any portion of the assets of the bank. What he offered to sell was his stock. And his letter of February 3rd to the FDIC says, I want to sell my stock. And the response back says, you want to sell your stock. And thereafter, it all went downhill from there. So the characterization that was taken from this document, which was neither essential to the allegations of the complaint nor a requirement thereof to its understanding, in order to reach the result that the district court did in dismissing the case under 12B1 was inappropriate. Well, where do we go from here? I'm looking at page 448 of the excerpt. I'm sure not only have you read this, but you lived it. The court. I'll even do one thing more for you. I'll give you leave to amend again, but your amendment had better be filing the papers that show that you had a prospective deal to sell stock to somebody. I don't care who, Castle Freak or anybody. That lacks in this lawsuit. There's no evidence of any deal that was thwarted, and there's nothing you need declaratory relief on saying, hey, stop thwarting that deal. How do you respond to that? The court simply says, there's nothing showing any deal to sell stock to anybody. Well, that's because the court wrapped that term sheet into our complaint, when, in fact, that was not our position. And in the application for TRO, one of my clients did a declaration as to the stock sale. And so it's our position that having had a deal and having the deal fall apart and the mere fact that now the deal's gone forever does not vitiate the damages. Did you take the court's offer to amend again and show the stock deal in the amendment? You know, I really wanted to. The problem was two days later, I got a telephone call from the court saying that the court was having trouble writing the ruling. And that's when the ruling changed from granting me leave to amend to simply dismissing the case, and hence the instant appeal. All right. And did you appeal to the district court from that order and say, wait a minute, we still want to amend 60B or anything like that? I don't believe I filed a motion for reconsideration. We had been in front of that court many times on this one motion, and I don't believe I filed a motion for reconsideration. But I don't believe that operates as a waiver of our appeal. Futility might have taken over at that point. There was a certain feeling that I was on a train on a track and it was going one direction. I can read that from the record. Understood. Thank you. Thank you. Thank you. Thank you.
judges: Kozinski, Trott, Molloy